

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| ERIK SALAIZ,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL TAX ADVISORY SERVICES, LLC a California Limited Liability Company, and MATTHEW LEVY<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ **EP22CV0006**<br>§<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff ERIK SALAIZ ("Plaintiff") is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant NATIONAL TAX ADVISORY SERVICES, LLC ("National") is a Limited Liability Company organized and existing under the laws of California and can be served via registered agent The Law Offices of Keith F. Elder, a Professional Corporation c/o Keith F. Elder at 21550 Oxnard Street, Suite 630 Woodland Hills, California 91367.

3. Defendant MATTHEW LEVY ("Levy") is a natural person, resident of California, and Chief Executive Officer of National and can be served at 6163 White Oak Avenue Encino, California 91316.

4. Defendant National principals place of business is 6345 Balboa Boulevard, Building 3, Suite 160 Encino, California 91316.

5. Defendants National and Levy (together "Defendants")

## NATURE OF ACTION

6. Plaintiff brings this Complaint and Demand for Jury Trial against Defendants to stop placing illegal robo and unauthorized calls to Plaintiff's personal cell phone and to obtain redress as authorized by statute.

7. Defendants offer tax debt relief services to consumers. As part of marketing their services, Defendant National and their agents placed illegal robocalls to Plaintiff's cell phone that used an automated telephone dialing system ("ATDS") and a prerecorded voice advertisement.

8. Defendant National make unsolicited and unauthorized phone calls to thousands of consumers using artificial or prerecorded voice messages to sell their services.

9. Defendants did not obtain express written consent from Plaintiff prior to calling his cell phone, and Defendants are therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

10. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendant National's use of technological equipment to spam consumers on a grand scale without their consent.

12. By placing the calls at issue, Defendants have violated the statutory rights and privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

13. Plaintiff therefore seeks an injunction requiring Defendant National to stop calling his personal cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

14. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

15. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

16. This Court has personal jurisdiction over Defendants because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

17. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## FACTUAL ALLEGATIONS

18. Plaintiff's personal cell phone (915) 490-0898 is on the National-Do-Not-Call-Registry.

19. Defendant National offers tax debt relief services to consumers who owe back taxes to the IRS.

20. Defendant Levy is the Chief Executive officer of National and controls and dominates Natinoal.

21. Defendant Levy approves of the contracts with the telemarketers who make illegal robocalls with artificial or prerecorded voice messages to thousands of consumers cellular and residential phone numbers using an ATDS.

22. Defendant Levy authorizes the payments to the telemarketers.

23. Defendant Levy pays the telemarketers out of bank accounts he owns and controls.

24. Defendant Nunez provides instruction and guidance on who to solicit and the minimum qualifications of potential clients.

25. Defendant Levy has full control over National and has the authority to stop the illegal robocalls however has refused to do so because it benefits defendants financially.

26. Defendant Levy approves of the scripts when calling consumers (like the ones alleged in this complaint) with the prerecorded voicemails that say "Hey it's Melissa I'm calling you from tax help center um just following up with a message I left you last week regarding your back income tax debt and I got some great news for you with new changes that have taken effect and I just wanted to discuss your repayment or elimination options as its imperative that I speak to you just as soon as possible, uh my phone number is 866-713-6082 uhm I look forward to hearing from you and have a great day."

27. On October 22, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant National from phone number (346) 245-6775. Before Plaintiff could answer he received a voicemail that stated "Hey it's Melissa I'm calling you from tax help center" and to call back phone number (866) 713-6082.

28. Plaintiff never gave his express written consent to receive automated/prerecorded voicemails or phone calls from Defendant National and had no relationship with Defendant National prior to this interaction.

29. On October 22, 2021 Plaintiff responded to the voicemail and called (866) 713-6082.

30. Plaintiff was directed to a live representative name Aaron. Plaintiff advised Aaron he received a voicemail with a prerecorded message from Melissa regarding back income tax debt and to call this number.

31. Aaron acknowledged the voicemail sent to Plaintiff and asked if he owed any taxes to the IRS or the state.

32. Plaintiff advised Aaron he owed back taxes to the IRS for the sole purposes of identifying who was responsible for making the illegal robocalls to his personal cell phone.

33. Aaron then collected personal information from Plaintiff name, mailing address, date of birth, employment, and income then advised Plaintiff he was going to transfer him to his "tax specialist."

34. Plaintiff was then transferred to another representative named Bill Anderson that stated he was a "senior advisor" and that their company is a "full service tax attorney firm."

35. Bill advised Plaintiff that their CPA's and attorney's will fight for his case to either get his balances to a lower amount or they would get the interest and fees eliminated and get the debt negotiated down.

36. Bill advised Plaintiff "for a case like this is usually around $2,800 to $3,000 but in your situation we're going to go ahead and get everything done for only $2,400, that's it." He then advised Plaintiff these are up front fees and they offer in house financing from three different lenders.

37. Plaintiff advised Bill that he was not comfortable moving forward with services until knowing who the company is and requested for Bill to send his information via email however Bill wasn't able to and instead sent a text to Plaintiff's personal cell phone (915) 490-0898 from phone number (619) 930-9085 with the following information: Bill Anderson, National Tax Advisory Services, banderson@ntastax.com, (818) 698-3304, and ntastax.com

38. Plaintiff advised Bill that he would review the information and call Bill back if he wanted to proceed with National services.

39. On October 25, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant National from phone number (800) 829-6598.

40. Plaintiff answered and was greeted by Bill Anderson calling to follow up. Plaintiff advised Bill that he was driving and then the call disconnected.

41. On November 11, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant National from phone number (800) 926-5953.

42. Plaintiff answered and was greeted by Bill Anderson following up with Plaintiff. Plaintiff advised Bill that he is no longer interested at the moment.

43. On November 30, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant National from phone number (432) 315-3374.

44. Plaintiff answered and was greeted by a representative named Adrian that stated he was calling from National Tax following up in regards to his tax debt confirming this was another unauthorized call made by National.

45. Adrian advised Plaintiff that he didn't qualify for the program because he had no monthly income and to call them back once he did.

46. On November 30, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant National from phone number (323) 454-1275.

47. Plaintiff answered and was greeted by a representative named Nancy who stated she was calling from Tax Group to offer the Covid-19 tax relief program or the fresh start program for unpaid federal or state back taxes.

48. Nancy then asked Plaintiff if he had any federal or state back taxes they can help him with. Plaintiff advised Nancy he owed back taxes to the IRS for the sole purposes of identifying who was responsible for making the illegal robocalls to his personal cell phone.

49. Nancy then collected personal information from Plaintiff name, mailing address, date of birth, employment, and income then advised Plaintiff she was going to transfer him to her "specialist" to see what program best fits him.

50. Plaintiff was then transferred to the same representative Bill Anderson confirming this unauthorized phone call was made on behalf of National.

51. Plaintiff advised Bill that he was not interested at the moment and would call Bill back if he was.

52. Plaintiff never gave his express consent to receive follow up calls from Bill Anderson or any other representative from Defendant National.

53. The follow up calls from Bill Anderson made to Plaintiff's personal cell phone (915) 490-0898 are not in any way, shape, or form considered "business relationship" without Plaintiff giving his express consent to receive follow up calls.

54. Defendants purposefully availed themselves of the forum state by specifically targeting Texas residents by using Texas area codes to trick consumers into thinking the calls were local.

55. Table A displays the calls made by the defendants

| Date | Time | Caller ID |
|---|---|---|
| 10/22/2021 | 1:07PM | 346-245-6775 |
| 10/25/2021 | 9:31AM | 800-829-6598 |
| 11/11/2021 | 12:16PM | 800-926-5953 |
| 11/30/2021 | 4:47PM | 432-315-3374 |
| 11/30/2021 | 5:45PM | 323-454-1275 |

56.

57. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

58. The unauthorized phone calls made from or on behalf of Defendant National to Plaintiff's personal cell phone (915) 490-0898 were made using an ATDS that has the capacity to store and produce telephone numbers using a random or sequential number generator.

59. The unauthorized phone calls made from or on behalf of Defendant National to Plaintiff's personal cell phone (915) 490-0898 generally had a delay of 3-4 seconds of dead air before an audible tone connected the Plaintiff to a representative, indicating the calls were initiated using an ATDS.

60. Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

61. The Defendants never sent Mr. Salaiz any do-not-call policy. Plaintiff sent an internal do-not-call policy request to info@ntastax.com.

62. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Salaiz the unsolicited calls.

63. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

64. Defendant Levy participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

65. Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy. This is amply supported by the complaints Defendants receive that are available from the Better Business Bureau ("BBB"). The full scale of the complaints Defendants receive is not currently available to Plaintiff but will be revealed through discovery to amplify what is shown below.

66. Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendants financially.

67. Plaintiff never consented to receive the calls alleged herein. Plaintiff had no relationship with Defendants prior to the calls alleged herein.

**The Texas Business and Commerce Code 305.053**

68. The Texas Business and Commerce code has an analogous portion that is related to the

TCPA and was violated in this case.

69. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### Violations of the Texas Business and Commerce Code § 302.101

70. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

71. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

72. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

73. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

74. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

75. Plaintiff has been annoyed, harassed, and irritated by robocalls placed by the Defendants and other similar companies.

76. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

## **FIRST CAUSE OF ACTION**

### Willful and/or Knowing Violation of 47 U.S.C. § 227
### Telephone Consumer Protection Act of 1991
### (Against all Defendants)

77. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78. Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

79. Plaintiff never consented to receive calls from Defendants. Plaintiff has no relationship with Defendants.

80. Defendants' calls were made for purposes of advertising and marketing Defendants' tax debt relief services. These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

81. The calls were made using an artificial or prerecorded voice message to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

82. As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

83. Not only did Defendants make these violating calls, Defendants and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

84. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

**SECOND CAUSE OF ACTION**
**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**
**(Against All Defendants)**

85. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

86. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [1];

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [2]; and,

    c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[3]

87. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

---

[1] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order

88. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## THIRD CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

89. Plaintiff incorporates the foregoing allegations as if set forth herein.

90. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Salaiz cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

91. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

92. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**

## FOURTH CAUSE OF ACTION
### (Violations of The Texas Business and Commerce Code 302.101)

93. Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

94. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

95. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A.  Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.  A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.  An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.  An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for five calls.

E.  An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.  An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.  An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

H.  An award to Mr. Salaiz of interest, costs and attorneys' fees, as allowed by law and equity

I.  Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

January 3, 2021                    Respectfully Submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-490-0898
Salaiz.ep@gmail.com